UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AIDA GONZALEZ,

                      Plaintiff,

-v-

NYU LANGONE MEDICAL CENTER, VICTORIA AGOSTINI, MICHELE OKOLOVITCH, WAYNE HALL, BETTY J. PEREZ, REBECCA ORTIZ, CATHLEEN PACINA, EMMA ATANASIO, ROSA PEREZ, and AMI HOROWITZ,

                      Defendants.

18 Civ. 1797 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Plaintiff Aida Gonzalez brings this action against defendants NYU Langone Medical Center ("NYUH"), a hospital located on the east side of Manhattan, and various hospital employees (collectively, "defendants").[1] Gonzalez worked as a host associate in the food services department of NYUH from in or around 1998 through on or about February 7, 2017, when she was terminated. She alleges that she was terminated in retaliation for assisting other employees with their complaints about unfair treatment by hospital staff, including internal complaints to hospital supervisors and, on one occasion, a lawsuit in state court. She claims that she advocated for at least one co-worker who had been discriminated against on the basis of her perceived sexual orientation and that Gonzalez's termination therefore violated Title VII of the

---

[1] NYU Langone Medical Center is not a properly named entity. *See, e.g., Thompson v. Jamaica Hosp. Med. Ctr.*, No. 13 Civ. 1896 (RWS), 2016 WL 4556905, at *5 (S.D.N.Y. Aug. 30, 2016) (NYU Langone Medical Center is not an "entity that can be properly named" in a lawsuit). Defendants explain that Gonzalez's actual employer was NYU Langone Hospitals. The Court therefore refers to Gonzalez's employer as NYUH.

1

Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").

Pending now is defendants' motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court denies the motion to dismiss Gonzalez's claims against NYUH but grants the motion to dismiss the claims against the individual defendants, which are brought exclusively under the NYSHRL and the NYCHRL.

## I. Background[2]

### A. Facts

#### 1. The Parties

NYUH is a New York City hospital located in the Kips Bay neighborhood of Manhattan. The individual defendants are all current or former NYUH employees. Most are either current or former employees in the hospital's food services department. These are: Victoria Agostini, a nighttime supervisor, SAC ¶ 8; Wayne Hall, a nighttime director, *id.* ¶ 10; Rebecca Ortiz, an assistant director, *id.* ¶ 12; Emma Atanasio, a director, *id.* ¶ 14; Rosa Perez, a non-supervising employee; Ami Horowitz, a vice president who oversees the food services, building services, and transport services departments, *id.* ¶ 16; and Betty J. Perez, a former director, *id.* ¶ 11. The remaining individual defendants are Michele Okolovitch, a former contractor at NYUH, *id.* ¶ 9; and Cathleen Pacina, a manager in the Human Resources Department, *id.* ¶ 13.

---

[2] The Court draws these facts principally from the Second Amended Complaint. Dkt. 70 ("SAC"). For purposes of the motion to dismiss under Rule 12(b)(6), the Court accepts all factual allegations in the SAC as true, drawing all reasonable inferences in Gonzalez's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Between November 1998 and February 7, 2017, Gonzalez worked as a host associate in the food services department of NYUH. *Id.* ¶ 18. In that role, she prepared trays of food for patients. *Id.*

### 2. Complaints of Inappropriate Employer Conduct

Gonzalez alleges that she "was rather involved in union activities" and that "on various occasions" she "stood up for" her co-workers. *Id.* ¶ 19. She claims that on one occasion she complained to defendant Cathleen Pacina about treatment directed toward Gonzalez's son and other hospital employees. *Id.* ¶ 20. The SAC does not contain any further information about the nature of the alleged treatment or NYUH's response, if any, to Gonzalez's complaints.

In or around March 2014, Gonzalez claims that she accompanied Aura Troche and Carlos Arias, two other NYUH employees, to a meeting with Pacina. *Id.* ¶ 21. Gonzalez claims that, because Troche and Arias speak little English, she acted as a translator on their behalf. *Id.* At this meeting, Gonzalez presented a letter, on behalf of Troche and Arias, to Pacina, accusing NYUH's building services department of harboring a hostile workplace. *Id.* This letter states that "[t]here ha[d] been countless incidents of harassment in [their] department, untold measures of disrespect and physical aggression that [were] going on a daily basis." *Id.* Ex. B ("Mar. 4, 2014 Ltr."). The letter does not allege that the abuse occurred because of any animus harbored by a building services department employee or hospital administrator. Nor does it contain complaints of discriminatory treatment that Gonzalez claims herself to have experienced.

Gonzalez claims that she believed Troche was being treated unfairly because Troche was perceived to be a lesbian woman. *Id.* ¶ 22. Gonzalez claims that, when she presented the letter dated March 4, 2014 to Pacina, Pacina was aware that Troche's co-workers and supervisors perceived her as a lesbian woman and that Troche was the only woman from the building

3

services department who worked in the operating room. *Id.* According to Gonzalez, Troche informed her that she felt a lot of pressure from management and that her supervisors told her things such as "you want to be a man, we are gonna work you like a man." *Id.* Gonzalez alleges that Troche also informed her that she was considering committing suicide. *Id.* None of the allegations that Troche was discriminated against on the basis of her perceived status as a lesbian woman, however, appear in the March 4, 2014 letter.

On October 18, 2016, Gonzalez claims that she accompanied Troche to the Law Offices of Kareem Abdo, Esq., to discuss the possibility that Troche was being treated differently from her co-workers because of her perceived sexual orientation, national origin, or gender. *Id.* ¶ 27. During this visit, Gonzalez assisted Troche by translating her statements to counsel and vice versa. *Id.* Gonzalez alleges that she performed such services for Troche on multiple, ensuing occasions. *Id.* ¶ 28.

Around a month or two after October 18, 2016, Gonzalez claims that she told defendant Rosa Perez that Troche was likely to sue the hospital. *Id.* ¶ 23. Gonzalez alleges that Perez shared with defendant Rebecca Ortiz, an assistant director in the food services department, both that Troche was considering taking legal action against the hospital and that Gonzalez was aiding her in bringing that lawsuit. *Id.*

On January 27, 2017, Troche filed a complaint in New York State Supreme Court alleging that NYUH and various of its employees, including several individual defendants here, violated the NYSHRL and NYCHRL. *Id.* ¶ 29. Gonzalez claims that the allegations in Troche's complaint would also be actionable under Title VII. *Id.* ¶ 30. On February 6, 2017, Troche's complaint was served on NYUH and the other defendants. *Id.* ¶ 31.

4

### 3. Gonzalez's Termination

On February 7, 2017, the day after NYUH was served with Troche's complaint, NYUH terminated Gonzalez's employment. *Id.* ¶ 32. According to Gonzalez, the stated reason for her termination was that she had not been present for work at an assigned time. *Id.* ¶ 34. Gonzalez claims, however, that she had been present at that time and that payroll records reflect that she was paid for that time. *Id.* ¶ 35. She claims that this was a "sham reason" provided to cover up NYUH's violation of her civil rights, *id.* ¶ 37, and that NYUH's ostensible rationale conflicted with the fact that she "ha[d] been given several commendations for perfect attendance for entire years at a time of work," *id.* ¶ 38 (emphasis removed).

Gonzalez claims that, on an unidentified date, Perez, an employee without supervisory authority, spoke with defendant Ami Horowitz, a vice president of NYUH, and asked that Gonzalez be rehired because Perez "felt guilty" that Gonzalez had been terminated. *Id.* ¶ 24. In March or April 2017, Gonzalez claims that Perez also confronted Troche and told her that Gonzalez had been fired because of her. *Id.* ¶ 25.

### B. Procedural History

On March 13, 2018, Gonzalez filed her initial complaint. Dkt. 12. On April 5, 2018, Gonzalez filed a first amended complaint. Dkt. 45.

On July 17, 2018, defendants filed a letter stating that plaintiff had filed an identical action in New York state court, that defendants had filed a motion to dismiss in that case, and that defendants requested an extension of the deadline to file an answer until after the state court issued its decision. Dkt. 52. On July 18, 2018, the Court granted that motion. Dkt. 53.

On May 7, 2019, the parties filed a joint letter notifying the Court that the state court had dismissed Gonzalez's complaint and that Gonzalez wished to file a second amended complaint

on that docket of this case that added NYSHRL and NYCHRL claims and addressed the deficiencies identified in the state court's decision. Dkt. 67. On May 8, 2019, the Court granted Gonzalez's request. Dkt. 68.

On May 16, 2019, Gonzalez filed the SAC. Dkt. 70. The SAC brought Title VII claims against NYUH and NYSHRL and NYCHRL claims against all defendants.[3] On June 12, 2019, defendants filed a motion to dismiss, Dkt. 74, and supporting memorandum of law, Dkt. 75. On June 13, 2019, the Court issued an order directing Gonzalez to file an amended complaint or to oppose defendants' motion. Dkt. 76. On July 3, 2019, Gonzalez filed an opposing memorandum of law. Dkt. 80. On July 10, 2019, defendants filed their reply. Dkt. 81.

## II. Applicable Legal Standards

### A. 12(b)(6)—Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145. That tenet, however, does not apply to legal conclusions. *See*

---

[3] The Second Circuit has explained that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII. Under the HRL, however, the individual defendants may be sued in their personal capacities." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

6

*Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### B. Retaliation Under Title VII, NYSHRL, and NYCHRL

Title VII prohibits employers from discriminating against an employee because that employee "has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Title VII thus is violated when "a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause." *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993).

In evaluating Title VII retaliation claims, "courts follow the familiar burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805 (1973)." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she participated in a protected activity; (2) participation in the protected activity was known to the employer; (3) the employer thereafter subjected her to a materially adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *See id.*

"[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's [complaint] was directed at conduct prohibited by Title VII." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107–108 (2d Cir. 2011) (quotation marks and citation omitted).

In a retaliation case, "[c]ausation can be proven either: '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other

7

circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Galimore v. City Univ. of N.Y. Bronx Comm. Coll.*, 641 F. Supp. 2d 269, 288 (S.D.N.Y. 2009) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). "While the Second Circuit has articulated no 'bright line' rule for when an alleged retaliatory action occurs too far in time from the exercise of a federal right to be considered causally connected, it is well settled that when 'mere temporal proximity' is offered to demonstrate causation, the protected activity and the adverse action must occur 'very close' together.'" *Id.* (internal citations omitted); *see also Giles v. NBC Universal, Inc.*, No. 10 Civ. 7461 (DAB), 2011 WL 4376469, at *3 (S.D.N.Y. Sept. 20, 2011) (when relying on temporal proximity to show causation, "the protected activity and alleged discriminatory treatment must be 'very close[ly]' associated to support an inference of retaliation" (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (alteration in *Giles*))); *Sareen v. Port Auth. of N.Y. & N.J.*, No. 12 Civ. 2823 (PAE), 2013 WL 6588435, at *14 (S.D.N.Y. Dec. 16, 2013) (collecting cases).

"[C]laims brought under [NYSHRL] are analytically identical to claims brought under Title VII." *Id.* at 107 n.10 (quotation marks and citation omitted). The NYCHRL imposes an identical standard, "except that the plaintiff need not prove any 'adverse' employment action; instead, [s]he must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Leon v. Columbia Univ. Med. Ctr.*, No. 11 Civ. 8559 (NSR), 2013 WL 6669415, at *12 (S.D.N.Y. Dec. 17, 2013), *aff'd*, 597 F. App'x 30 (2d Cir. 2015).

For Title VII, NYSHRL, and NYCHRL claims, the burden of proof to establish a *prima facie* case is "de minimis." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).

## III. Discussion

Defendants make four arguments why dismissal is warranted, all to the effect that the SAC does not allege a *prima facie* case of retaliation. First, they argue, the SAC does not plead that Gonzalez engaged in any protected activity. Second, they argue, even if the SAC so pleads, it does not plead that defendants were aware of such activity. Third, they argue, the SAC does not allege a causal nexus between any protected activity and Gonzalez's termination. Fourth, and finally, defendants contend that the SAC's NYSHRL and NYCHRL claims fail as to the individual defendants because the SAC does not allege either that any individual defendant was Gonzalez's employer or that these defendants aided and abetted the retaliatory conduct.

The Court first analyzes the Title VII and NYSHRL claims against NYUH, and considers these together, because the standards for liability under these statutes are coextensive. The Court then considers the NYCHRL claims against NYUH. Finally, the Court addresses whether the SAC's NYSHRL and NYCHRL claims against the individual defendants can stand.

### A. Title VII & NYSHRL Discrimination Claims

#### 1. Protected Activity

Gonzalez alleges that she engaged in three distinct protected activities in retaliation for which NYUH terminated her employment. These are: (1) accompanying and providing translation services for Troche in March 2014 when Gonzalez presented a letter, on behalf of Troche, to Pacina accusing NYUH of harboring a hostile work environment, (2) providing similar services for Troche on October 18, 2016, when Troche met with a lawyer in anticipation of bringing a discrimination lawsuit; and (3) helping Troche file a complaint in New York state court against NYUH for violating the NYSHRL and NYCHRL.

9

Defendants contend that none of these acts, as alleged, was a protected activity under the applicable laws. First, defendants argue that presenting the March 2014 letter is not a protected activity because it did not accuse NYUH or anyone of discrimination on the basis of a protected characteristic. Second, they contend that accompanying Troche to the offices of her lawyers is not a protected activity because neither NYUH nor any individual defendant was aware of those visits. Third, they argue that because Gonzalez was a third party to Troche's state-court lawsuit, Troche's filing of that complaint did not constitute a protected activity which Gonzalez can invoke a basis for relief. The Court addresses each in turn.

Defendants are correct that Gonzalez's efforts to assist Troche in March 2014, as pled, did not constitute, or relate to, a protected activity. The letter dated March 4, 2014, which Gonzalez presented to Pacina on behalf of Troche, states merely that the building services department has a "hostile work environment" and that "[t]here have been countless incidents of harassment in our department, untold measures of disrespect and physical aggression that are going on a daily basis." Mar. 4, 2014 Ltr. The letter is silent as to any protected characteristic. And mere complaints of unfair treatment without reference to any protected characteristic are insufficient to state a Title VII retaliation claim. *See, e.g., Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.3d 775, 781 (2d Cir. 1991) ("The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally."); *Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) ("[A]mbiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity."). Generalized claims of unfair or even abusive treatment, such as those contained in the March 4, 2014 letter, are insufficient because NYUH could not reasonably have

10

understood that the letter was complaining of "conduct prohibited by Title VII." *See Rojas*, 660 F.3d at 108 (affirming finding that evidence showed that plaintiff's complaints were generalized and therefore defendant could not reasonably have understood that she was complaining of conduct prohibited by Title VII) (internal quotation marks and citation omitted).

However, Gonzalez's October 18, 2016 assistance to Troche during her visit to the Law Offices of Kareem Abdo, and Troche's later filing of a complaint against NYUH on January 27, 2017, which was later served on NYUH, were protected activities. As to the October 18, 2016 visit, the SAC alleges that Gonzalez discussed legal strategies with Troche's lawyers to vindicate her claims of discrimination on the basis of a protected characteristic. Gonzalez further claims that she accompanied Troche to additional meetings with the lawyers. Defendants contend that these visits cannot qualify as protected activities because neither NYUH nor any individual defendant who employed Gonzalez knew she was accompanying Troche on these visits. But that argument goes to a different issue. At this stage in the analysis, the question is only whether the SAC meets the minimal standards to plead that Gonzalez participated in a protected activity. That is clearly so, both as to the visit to Troche's lawyers and the filing of Troche's state-court complaint that proximately resulted. By actively participating in discussions with Troche's counsel in the preparation of such a legal action, Gonzalez fairly alleges that she was participating in the process of complaining to NYUH of unfair treatment based on Troche's actual and perceived membership in multiple protected classes (e.g., on the basis of her gender and perceived sexual orientation).

As to Troche's filing of a complaint in state court accusing NYUH of discrimination, it was the natural outgrowth of these meetings. Defendants contend that actions by a third-party (here, Troche) cannot legally be the basis of a plaintiff's retaliation claim. But neither the

Supreme Court nor the Second Circuit has foreclosed such a claim. The Supreme Court has expressly reserved this question. *See Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174–75 (2011) (noting that "Title VII's antiretaliation provision is worded broadly" and "there is no textual basis" that "justifies a categorical rule that third-party reprisals do not violate Title VII"). The Second Circuit, too, has identified this scenario as an open question. *See Mutts v. S. Conn. State Univ.*, 242 F. App'x 725, 727 (2d Cir. 2007) ("This Circuit has not yet decided whether third party retaliation claims are cognizable under Title VII."). The Circuit has twice considered this question. Each time it held, for other reasons, that the plaintiff failed to plead or establish a *prima facie* case of retaliation. *See Mutts*, 242 F. App'x at 727 (finding that even if a third-party retaliation claim was cognizable under Title VII, plaintiff failed to show that employer's actions "amount[ed] to materially adverse changes in [plaintiff's] work conditions"); *Thomas v. Am. Horse Shows Ass'n*, 205 F.3d 1324, 1324 (2d Cir. 2000) (finding that even if a third-party retaliation claim was cognizable under Title VII, plaintiff failed to make out a *prima facie* case of retaliation).

Instructive cases from other circuits, which have resolved this question, support a finding here that Gonzalez's actions on behalf of Troche constituted protected activities under Title VII. In *EEOC v. Ohio Edison Co.*, 7 F.3d 541 (6th Cir. 1993), the Sixth Circuit held that a plaintiff engaged in protected activity under Title VII when he had a co-worker oppose their employer's racially discriminatory conduct on his behalf. *Id.* at 545–46. The Sixth Circuit explained, "The causal link in the present case between the person engaging in the protected activity and the person retaliated against is clear, because the person, allegedly engaging in protected activity, was protesting the allegedly unlawful discharge of Whitfield and was allegedly acting on his behalf." *Id.* at 546. And the Eleventh Circuit in *Wu v. Thomas*, 863 F.2d 1543 (11th Cir. 1989),

held that a husband could state a retaliation claim under Title VII where the university at which he and his wife worked retaliated against him because his wife had filed an EEOC claim against the university. *Id.* at 1548.

Taken together, *Ohio Edison* and *Wu* support finding that Gonzalez has adequately pled that she engaged in a protected activity here by assisting Troche's various efforts to complain (and ultimately sue) NYUH. As pled, Gonzalez significantly assisted Troche both in deciding whether to sue NYUH and also in helping Troche's counsel understand the nature of Troche's grievances so as to formulate her state-court complaint. More broadly, the SAC alleges that Gonzalez repeatedly assisted Troche, and other employees, in complaining about discriminatory conduct at NYUH, and, even if some of Troche's complaints involved non-cognizable generalized grievances, others did not. Taken as a whole, the SAC fairly pleads a continuing pattern of collaboration with and assistance to Troche on Gonzalez's part that make it plausible that an outsider such as NYUH could attribute Troche's grievances in part to Gonzalez, including, ultimately, the filing of Troche's 2017 state-court lawsuit. Accordingly, the Court finds that the SAC adequately pleads that, in helping Troche bring that lawsuit, Gonzalez was engaged in a protected activity.

### 2. Defendants' Awareness of Gonzalez's Protected Activity

The Court considers next whether the SAC adequately alleges that NYUH was aware of Gonzalez's efforts to assist Troche. For the following reasons, the Court finds that it does.

According to Gonzalez, a month or two after her visit to Troche's lawyer's office, she told Rosa Perez that she had been assisting Troche in potentially filing a complaint against NYUH. SAC ¶ 23. She further alleges that Perez shared information, including that Gonzalez was aiding Troche in bringing claims against the hospital and other individuals such as Pacina,

13

with Rebecca Ortiz. *Id.* These allegations suffice. Gonzalez must establish "general corporate knowledge" of her protected activity. *See Gordon*, 232 F.3d at 116 ("Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity."); *Risco v. McHugh*, 868 F. Supp. 2d 75, 112 (S.D.N.Y. 2012) ("An individual decisionmaker's lack of knowledge of Risco's protected activity does not undermine Defendant's knowledge of her informal EEOC complaint."). The SAC, by alleging facts putting two NYUH defendant officials on notice of Gonzalez's assistance, sufficiently pleads general corporate knowledge of Gonzalez's efforts to assist Troche in bringing her complaint against NYUH.

To be sure, the evidence uncovered in discovery may fail to support that individual defendants, or conceivably NYUH as a whole, were aware that Gonzalez was assisting Troche. In that case, NYUH may be entitled to summary judgment. At the motion to dismiss stage, however, the Court must accept as true all factual allegations in the SAC. Here, the SAC plausibly alleges that Rosa Perez and Rebecca Ortiz both knew that Gonzalez was assisting Troche in bringing a complaint against the hospital and communicated that information to Gonzalez's superiors. That is sufficient to establish, at the motion to dismiss stage, defendants' awareness of Gonzalez's participation in protected activity.

### 3. Causal Nexus Between Gonzalez's Activities and Her Termination

Defendants next argue that the passage of time between Gonzalez's October 18, 2016 law office visit with Troche and Gonzalez's termination on February 7, 2017 is too great to support a causal link between her protected activity and the adverse employment action she suffered. In support, defendants cite *Clark County School District v. Breeden*, 532 U.S. 268 (2001), which held that cases that rely on "mere temporal proximity between an employer's knowledge of

14

protected activity and an adverse employment action as sufficient evidence of causality . . . uniformly hold that the temporal proximity must be very close." *Id.* at 273 (internal quotation marks and citations omitted); *see also Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (collecting cases requiring a temporal gap of three months or less between the protected activity and the retaliatory act to establish causation).

Defendants' argument is easily dispatched. Contrary to defendants' depiction, the SAC clearly alleges that Gonzalez accompanied Troche on multiple law office visits between October 18, 2016 and January 27, 2017, the date on which Troche's complaint was filed. She also alleges that Perez was aware of those multiple visits and informed on an ongoing basis at least one of her superiors, Ortiz, that Gonzalez was accompanying Troche on those visits. The latter such visits were well within three months of Gonzalez's termination.

In any event, the more relevant comparison in determining whether an inference of retaliatory motivation is warranted is between the date when NYUH was served with (and thereby became aware of) the lawsuit filed by Troche and the date of the adverse employment action taken against Gonzalez. As pled, Gonzalez was fired the day after NYUH was served with Troche's complaint. As pled, that complaint directly resulted from Gonzalez's efforts— allegedly known to NYUH—on Troche's behalf to assist her in filing a suit alleging that NYUH and its employees discriminated against Troche on account of her gender and perceived sexual orientation. The very close time period between these events naturally gives rise to an inference of causation.

The Court thus rejects defendants' argument that the SAC inadequately pleads the necessary causal link.

### B. NYCHRL Claims

For NYCHRL retaliation claims, "the plaintiff [only needs to] show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013). The Court has already found that the SAC adequately alleges that Gonzalez assisted Troche in bringing her state-court complaint, and thereby acted in opposition to her employer's discrimination. And the act of terminating Gonzalez's employment in response, as alleged, is one reasonably likely to deter her from engaging in such action. Accordingly, for the reasons set out in the discussion of the Title VII and NYSHRL claims, the Court finds that the SAC states a claim against NYUH under the NYCHRL.

### C. NYSHRL and NYCHRL Claims Against Individual Defendants

Having sustained all claims against NYUH, the Court considers next the claims against the individual defendants, which are brought exclusively under New York state and city law. These defendants contend that the SAC does not allege that they were, as required, either Gonzalez's employer or that they aided and abetted the retaliatory conduct against her.

Under the NYSHRL and NYCHRL, an individual who "actually participates in the conduct giving rise to a discrimination claim" may be liable as an aider and abettor, regardless whether that individual is the plaintiff's employer. *Tomka*, 66 F.3d at 1317. The SAC, however, does not allege that any individual defendant is Gonzalez's employer. Nor does it set out with specificity any discriminatory conduct on the part of any individual defendant against Gonzalez or her co-worker Troche. As noted, the generalized complaints articulated in the March 4, 2014 letter that Gonzalez presented on behalf of Troche are insufficient to allege discrimination under

Title VII. But even if they had been, that letter does not name any individual defendant as responsible for the discriminatory conduct the letter describes. Indeed, with the exception of Wayne Hall, whom, the SAC alleges, made the statement to Gonzalez, "come on you make enough money," months before her termination, SAC ¶ 41, the SAC does not allege any even arguably discriminatory conduct on the part of any individual defendant. And Hall's single comment, which on its face is not indicative of discriminatory animus, does not supply an adequate basis to hold Hall liable under the state or city human rights laws.

Accordingly, the Court grants the motion to dismiss the NYSHRL and NYCHRL claims against the individual defendants.

## CONCLUSION

For the foregoing reasons, the Court denies in its entirety defendants' motion to dismiss Gonzalez's claims against NYUH, brought under Title VII, the NYSHRL, and the NYCHRL. The Court, however, grants the motion to dismiss the claims against the individual defendants, which are all brought under the NYSHRL and the NYCHRL. The Court respectfully directs the Clerk of Court to terminate the motion pending at Dkt. 74.

Discovery will now commence. By Tuesday, September 10, 2019, the parties are to submit a proposed case management plan, consistent with the Court's Individual Rules and Practices in Civil Cases, that provides for the close of fact discovery by the end of January 2020.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: September 3, 2019
New York, New York