USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___9/16/2021___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AIDA GONZALEZ,

                      Plaintiff,

        -against-

NYU LANGONE HOSPITALS,

                    Defendant.

1:18-cv-01797-MKV

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

MARY KAY VYSKOCIL, United States District Judge:

      Plaintiff Aida Gonzalez asserts retaliation claims against Defendant NYU Langone Hospitals ("NYU Langone" or "Defendant") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.*  Before the Court is Defendant's motion for summary judgment, seeking dismissal of all of Plaintiff's claims.  (Mot. Summ. J. [ECF No. 130].)  For the reasons discussed below, Defendant's motion is GRANTED.

# BACKGROUND

## A. Factual Background[1]

NYU Langone is a premiere academic medical center with several hospitals and treatment centers in the New York City area.  (Def.'s 56.1 Statement ("Def.'s 56.1") ¶ 6 [ECF No. 132].) NYU Langone's Food and Nutrition Department (the "Department") works with doctors, nurses, and dieticians to provide appropriate meals to patients according to their individual needs.  (*Id.* ¶ 6.)

Plaintiff began working in the Department as a dietary aide in 1998.  (*Id.* ¶ 12; Pl.'s Opp. Ex. J at 198:2–198:3 [ECF No. 133-10].)  In this role, Plaintiff was responsible for, *inter alia*, providing quality customer service while delivering hospital patients with prescribed trays of food under the direction of the Patient Services Group.  (Def.'s 56.1 ¶ 14.)  This job requires communication skills, accurate decision-making, good attendance, and punctuality.  (*Id.*)

In recent years, the Department counseled and disciplined Plaintiff several times for documented performance-related issues.  (*Id.* ¶ 15.)  In June 2010, Plaintiff received a one-day suspension, which was later reduced to a written warning, for yelling loudly in a work area and

---

[1] The following facts are undisputed unless otherwise noted. Defendant asks the Court to deem its factual assertions contained in its 56.1 Statement admitted as true because Plaintiff did not file a 56.1 counterstatement. (Reply 3–4 [ECF No. 134].) Where the opposing party fails to respond to the movant's 56.1 statement, the Court may "accept the movant's factual assertions as true." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004); *see also* Local Civ. R. 56.1(c); *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009).  The Court, however, "has broad discretion" to overlook a party's failure to respond to a 56.1 statement and "may in its discretion opt to conduct an assiduous review of the record." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks omitted) (collecting cases). Although Plaintiff's failure to file a Rule 56.1 counterstatement is inexplicable because she is represented by counsel (*see* Order Denying Leave To File Surreply 3 [ECF No. 137]), the Court overlooks Plaintiff's omission and decides Defendant's motion having considered all admissible evidence in the record given this Circuit's strong preference for resolving disputes on the merits and that Plaintiff previously submitted a draft 56.1 Counterstatement with her response to Defendant's pre-motion letter (Pl.'s Draft 56.1 Response ("Pl.'s 56.1") [ECF No. 125-1]), which eases review of the record. *See, e.g.*, *Rodriguez v. Village of Ossining*, 918 F. Supp. 2d 230, 237 (S.D.N.Y. 2013); *Lopez v. Echebia*, 693 F. Supp. 2d 381, 386 (S.D.N.Y. 2010); *Hughes Contracting Indus., Inc. v. Reliance Constr. Of Can.*, No. 08 Civ. 10075(LBS)(HBP), 2010 WL 2985902, at *5 (S.D.N.Y. Feb. 8, 2010) (collecting cases), *report & recommendation adopted*, 2010 WL 2985901 (S.D.N.Y. July 27, 2010). In any event, most of Plaintiff's objections to Defendant's 56.1 Statement are fatally flawed for various reasons and the Court thus disregards them. *See generally Kho v. N.Y. & Presbyterian Hosp.*, 344 F. Supp. 3d 705, 710 n.2 (S.D.N.Y. 2018).

refusing to leave the workplace as directed.  (*Id.* ¶ 15.b.)  In October 2013, Plaintiff received a written warning for failing to serve a lunch tray to a patient.  (*Id.* ¶ 15.c.)  In November 2014, Plaintiff was counseled for failing to record and ensure the adequacy of the temperature in a hospital refrigerator.  (*Id.* ¶ 15.d.)  In June 2015, Plaintiff received a written warning with a two-day suspension for violating NYU Langone policy and food safety and infection control guidelines by consuming food and a beverage near meals prepared for hospital patients.  (*Id.* ¶ 15.e.)  Plaintiff was warned in connection with each of these incidents that further unsatisfactory performance would lead to disciplinary action up to and including suspension or termination.  (*Id.* ¶ 16.)

In October 2016, Plaintiff received a warning for failing to follow proper procedures regarding clocking in and out at the start and end of her shift and meal breaks.  (*Id.* ¶ 15.f.)  Plaintiff was directed to "immediately show improvement and sustain a satisfactory record" and warned that "[f]ailure to do so will result in further disciplinary action up to and including suspension or termination of [her] employment."  (Def.'s 56.1 Ex. Z.)  One week later, Plaintiff failed to appear for a shift without providing advance notice to management.  (Def.'s 56.1 ¶ 17.)  Department Manager Wayne Hall called Plaintiff and asked her why she did not appear, and Plaintiff responded that she had forgotten to show up and failed to provide advance notice.  (*Id.* ¶ 18.)  Consequently, Plaintiff received a three-day suspension and another written warning that any further infraction of this sort would result in disciplinary action up to and including termination.  (*Id.* ¶ 19.)

On January 12, 2017, Plaintiff submitted to Rebecca Ortiz, NYU Langone's Assistant Director of Patient Services, a form requesting a day off on January 20, 2017.  (*Id.* ¶ 20.)  The request form instructs employees to submit requests at least one month in advance and that requests submitted within one month may not be granted.  (*Id.* ¶ 21.)  Ms. Ortiz denied Plaintiff's request.  (Def.'s 56.1 Ex. BB.)  It is disputed, however, whether Plaintiff was notified of the denial of her

3

request prior to January 20, the date she had requested off.  (*Compare* Def.'s 56.1 ¶¶ 23–24, *with*
Pl.'s Opp. Ex. J at 113:24–114:15, 115:25–116:15.)

On January 19, 2017, at approximately 8:00 p.m., Plaintiff approached Mr. Hall in the
Department office.  (*Id.* ¶ 25.)  Plaintiff saw on the assignment sheet that she was scheduled to
work on January 20 and asked Mr. Hall why this was the case and whether he knew about her
request for the day off.  (*Id.* ¶ 26; *see* Pl.'s Opp. Ex. J at 114:15–114:19, 118:3–118:6.)  The parties
dispute what else was said between Plaintiff and Mr. Hall.  (*See* Pl.'s 56.1 ¶ 27.)  Mr. Hall reported
that Plaintiff told him that Ms. Oritz had given her the day off and that she had planned to go to
Pennsylvania.  (Def.'s 56.1 Ex. DD.)  Plaintiff testified that she told Mr. Hall that she had requested
the day off but had not heard back from Ms. Ortiz.  (Pl.'s Opp. Ex. J at 118:4–118:6.)  Mr. Hall
ultimately took Plaintiff's name off the assignment sheet, believing Plaintiff had the day off.
(Def.'s 56.1 ¶ 30.)

Plaintiff did not appear at work on January 20, 2017.  (*Id.* ¶ 31.)  Ms. Ortiz was advised
that Plaintiff told Mr. Hall that Ms. Ortiz had approved Plaintiff's request to take January 20 off
and to remove Plaintiff's name from the assignment sheet for that day.  (*Id.* ¶ 34.)  Upon hearing
this, Ms. Ortiz scheduled a meeting with Plaintiff, Mr. Hall, and Emma Atanasio, Director of Food
Services for Sodexo, to discuss this incident, Plaintiff's purported dishonesty, and the potential
ramifications.  (*Id.* ¶ 35.)  The group met on January 23, 2017.  (*Id.* ¶ 36.)  At the meeting, Plaintiff
denied that she told Mr. Hall that Ms. Ortiz had given her the day off.  (*Id.* ¶ 38.)

On January 26, 2017, Mses. Ortiz and Atanasio spoke with Kathleen Pacina of NYU
Langone's Department of Employee and Labor Relations about the meeting with Plaintiff.  (*Id.*
¶ 40.)  Later that day, Ms. Pacina, via e-mail, advised Nicole Delts, then-Assistant Director of
NYU Langone's Department of Employee and Labor Relations, of Plaintiff's disciplinary history

and written warnings and inquired whether termination was appropriate given Plaintiff's recent allegedly dishonest act.  (*Id.* ¶¶ 41–43.)  On February 7, 2017, Ms. Ortiz advised Plaintiff that NYU Langone had terminated her employment based on her dishonesty in violation of NYU Langone's Code of Conduct, sub-standard absenteeism, lack of regard for her job, and overall employment record.  (*Id.* ¶ 44.)

Plaintiff alleges that she began assisting her co-worker Aura Troche with a lawsuit against NYU Langone by providing translation services at the office of Ms. Troche's attorney—Plaintiff's counsel in this case—on October 18, 2016.  (Third Am. Compl. ¶ 28 [ECF No. 91].)  Plaintiff alleges that she visited counsel's office several times in connection with that lawsuit before Ms. Troche filed a complaint in New York State Supreme Court on January 27, 2017, alleging claims under the NYSHRL and NYCHRL.  (*Id.* ¶¶ 29–31.)  NYU Langone was served with Ms. Troche's complaint on February 6, 2017, the day before Plaintiff was terminated.  (*Id.* ¶¶ 32–33.)

## B.  Procedural Background

Plaintiff filed the original Complaint in this action in March 2018, asserting a retaliation claim under Title VII against NYU Langone and several NYU Langone employees (collectively "Defendants").  (Compl. [ECF No. 12].)  Plaintiff filed the First Amended Complaint shortly thereafter.  (First Am. Compl. [ECF No. 45].)

In July 2018, Defendant advised the Court (Engelmayer, *J.*) that Plaintiff previously had filed an identical action in New York state court based on identical facts and asserting similar retaliation claims under the NYSHRL and NYCHRL and that Defendants had moved to dismiss that action.  (Letter July 17, 2018 [ECF No. 52].)  In May 2019, after the state court dismissed Plaintiff's complaint, Judge Engelmayer granted Plaintiff leave to file a Second Amended Complaint in this action to add claims under the NYSHRL and NYCHRL addressing the

deficiencies identified by the state court.  (Letter May 7, 2019 [ECF No. 67]; Order May 8, 2019 [ECF No. 68]; Second Am. Compl. [ECF No. 70].)  Defendants moved to dismiss Plaintiff's Second Amended Complaint shortly thereafter.  (Mot. Dismiss [ECF No. 74].)  In September 2019, Judge Engelmayer held that Plaintiff plausibly stated claims under Title VII, the NYSHRL, and the NYCHRL against NYU Langone but not against the individual Defendants and dismissed the individual Defendants from the case. (*See generally* Opinion & Order [ECF No. 82].)[2]  Plaintiff then filed the Third Amended Complaint.  (Third Am. Compl. [ECF No. 91].)

This case was reassigned to me in February 2020.  After the parties completed discovery, Defendant moved for summary judgment.  (Mot. Summ. J. [ECF No. 130].)  In support of its motion, Defendant filed a 56.1 statement with several exhibits (Def.'s 56.1 [ECF No. 132]) and a memorandum of law (Def.'s Br. [ECF No. 131]).  In opposition, Plaintiff filed a memorandum of law, attached to which are several exhibits.  (Pl.'s Opp. [ECF No. 133].)  Defendant filed a reply. (Def.'s Reply [ECF No. 134].)  The Court denied Plaintiff's request for leave to file a surreply. (Order Denying Leave To File Surreply [ECF No. 137].)

## LEGAL STANDARDS

### A.  Summary Judgment

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 69 (2d Cir. 2015) (quoting Fed. R. Civ. P. 56(a)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A

---

[2] The district court later granted Plaintiff leave to amend the Second Amended Complaint.  (Order [ECF No. 90].)

fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. A material factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. It may satisfy this burden "in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988)).

If the moving party satisfies its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson*, 477 U.S. at 249). The non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts' and 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (first quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); then quoting *FDIC v. Great American Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)); *see also Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (noting that "the nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden" (citing *Celotex*, 477 U.S. at 324; and *Matsushita*, 475 U.S. at 586)). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citing *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)).

**B. Retaliation**

Retaliation claims under Title VII, the NYSHRL, and the NYCHRL are assessed under the three-part, burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Maynard v. Montefiore Med. Ctr.*, No. 18-CV-8877 (LAP), 2021 WL 396700, at *6 & n.8 (S.D.N.Y. Feb. 4, 2021) (collecting cases). While the same framework applies, the NYCHRL applies more liberal proof standards as to certain elements. *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 327 (S.D.N.Y. 2020) (citing *Deveaux v. Skechers USA, Inc.*, No. 19 Civ. 9734 (DLC), 2020 WL 1812741, at *5 (S.D.N.Y. Apr. 9, 2020)).

Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of retaliation by showing that: "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (quoting *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006)). As to the last element, Title VII claims require "but-for causation," *i.e.*, "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). The same but-for causation is required for NYSHRL claims. *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 340 n.22 (S.D.N.Y. 2020) (collecting cases). Under the less-stringent NYCHRL, "summary judgment is appropriate only if the plaintiff cannot show that retaliation played any part in the employer's decision." *Mihalik v. Credit Agricole Cheuvreux N. America, Inc.*, 715 F.3d 102, 116 (2d Cir. 2013).

If the plaintiff establishes a prima facie case of retaliation, "a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason

for the adverse decision or action." *Mario v. P&C Food Mkts., Inc.*, 313 F.3d 758, 767 (2d Cir. 2002) (citing *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001)).  This burden "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).  If the "explanation provided [is] legally sufficient to justify a judgment for the defendant" and the defendant "clearly set[s] forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection," the presumption raised by the prima facie case is rebutted.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

Finally, "[i]f the defendant proffers such a legitimate reason for the challenged actions, the presumption of discrimination created by the prima facie case drops out of the analysis, and the defendant 'will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.'" *Mario*, 313 F.3d at 767 (quoting *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000)).  In particular, the plaintiff must "produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 231 (2d Cir. 2015) (quoting *Sista v. CDC Ixis N. America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).  "To get to the jury, it is not enough to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (alterations, ellipsis, and internal quotation marks omitted) (quoting *St. Mary's*, 509 U.S. at 519).

## DISCUSSION

Defendant does not challenge that Plaintiff has established the first three elements of a *prima facie* retaliation claim.  Defendant argues that Plaintiff has not—and cannot—establish a retaliatory nexus, or causal connection, between her allegedly assisting Ms. Troche and her

termination. (Def.'s Br. 8–14.) Based on the evidence in the record, the Court concludes that Plaintiff has failed to show causation to establish a *prima facie* case of retaliation or to raise a genuine dispute of material fact as to her retaliation claims. Defendant is entitled to judgment as a matter of law.

A plaintiff can establish a causal connection either "indirectly, by showing that the protected activity was followed closely by discriminatory treatment," or "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015). "While temporal proximity can support an inference of retaliation for purposes of establishing a *prima facie* case, the proximity must be 'very close.'" *Dhar v. City of New York*, 655 F. App'x 864, 865–66 (2d Cir. 2016) (summary order) (quoting *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014)). "It is axiomatic that an adverse employment action cannot serve as the basis for a retaliation claim if the retaliatory action took place prior to the protected activity." *United States v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 365, 404 (S.D.N.Y. Sept. 18, 2018) (citing *Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 974 F. Supp. 2d 240, 262 (S.D.N.Y. 2013), *aff'd*, 641 F. App'x 60 (2d Cir. 2016)).

Plaintiff cannot establish an indirect causal connection because the disciplinary process that ultimately led to her termination began before Defendant learned of her protected activity and indisputably followed a series of prior unrelated disciplinary warnings. On January 23, 2017, Ms. Ortiz held a meeting with Plaintiff, Mr. Hall, and Ms. Atanasio regarding Plaintiff's January 20 absence and purported misrepresentations to Mr. Hall. (Def.'s 56.1 ¶¶ 35–36.) Ms. Troche's complaint, however, was filed in state court on January 27 and served on Defendant on February 3. (*Id.* ¶ 55; Pl.'s 56.1 ¶ 55.) Because the disciplinary procedures began before Defendant learned

of Plaintiff's protected activity, Plaintiff cannot establish causation as a matter of law. *See, e.g.*, *Martinez v. Davis Polk & Wardwell*, 713 F. App'x 53, 57 (2d Cir. 2017) (summary order) (finding plaintiff failed to show inference of retaliation because "a reasonable jury could not conclude that [defendant's] treatment of [plaintiff] in the wake of her EEOC filing . . . was retaliatory as opposed to the culmination of 'gradual adverse job actions' that began *three years prior* to the alleged retaliatory event" (quoting *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2d Cir. 2001))); *Baez v. New York*, 629 F. App'x 116, 119 (2d Cir. 2015) (summary order) (holding that "the fact that the alleged retaliatory course of conduct began long before [plaintiff] filed her 2009 lawsuit undercuts any inference of a causal connection between the two" (citing *Slattery*, 248 F.3d at 95)); *Holmes v. Astor Servs. for Children & Families*, No. 16 Civ. 2260 (CS), 2017 WL 3535296, at *7 (S.D.N.Y. Aug. 16, 2017) ("Because these allegedly retaliatory events all occurred before Plaintiff engaged in any protected activity, no causal connection can be established between them and her complaint of discrimination." (citing *Dansler-Hill v. Rochester Inst. of Tech.*, 764 F. Supp. 2d 577, 582 (W.D.N.Y. 2011))); *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 128–29, 946 N.Y.S.2d 27 (1st Dep't 2012) (finding no causal connection for NYCHRL retaliation claim where alleged adverse action was a continuation of Defendants' course of conduct that began before the protected activity took place).

Plaintiff argues that Defendant knew about her efforts to assist Ms. Troche before the disciplinary procedures stemming from Plaintiff's January 20 absence began because Plaintiff's co-worker Rosa Perez had previously told Ms. Ortiz about Plaintiff's efforts. (Pl.'s Opp. 13.) Plaintiff, however, relies exclusively on her own deposition testimony to support this assertion, which is insufficient to create a genuine issue of fact. *See Kunik v. New York City Dep't of Educ.*, 436 F. Supp. 3d 684, 695 (S.D.N.Y. 2020) (collecting cases). Even if Plaintiff's own deposition

testimony could create a genuine issue of fact, Ms. Perez's alleged knowledge cannot be imputed to NYU Langone because Ms. Perez was merely a co-worker.  (Def.'s 56.1 ¶ 47; Pl.'s 56.1 ¶ 47.b.)  *See Costa v. Sears Home Improvement Prods., Inc.*, 65 F. Supp. 3d 333, 348 (W.D.N.Y. 2014); *see also Sarit v. Westside Tomato, Inc.*, No. 18-CV-11524 (RA), 2020 WL 1891983, at *8 (S.D.N.Y. Apr. 16, 2020) (noting that general corporate knowledge may "arise when a supervisor, corporate officer, or employee whose job is to investigate and resolve discrimination complaints becomes aware of the protected activity" (collecting cases)).  Furthermore, Plaintiff's assertion that Ms. Ortiz knew of Plaintiff's efforts to assist Ms. Troche is based on pure speculation that Ms. Perez was an "informer" who was "very close" with Ms. Ortiz.  (*See* Pl.'s Opp. Ex. J at 81:4–84:12.)  Critically, Plaintiff testified that Ms. Perez never told Plaintiff that she had spoken to Ms. Ortiz; that Ms. Ortiz never told Plaintiff that she had spoken to Ms. Perez; and that no one ever told Plaintiff that Mses. Ortiz and Perez had spoken with each other.  (*Id.* at 84:3–84:12.)  Plaintiff offers no admissible evidence to support the speculative claim that Ms. Perez told Ms. Ortiz about Plaintiff's assistance to Ms. Troche.  Because Plaintiff's assertion that Ms. Perez had advised NYU Langone management of Plaintiff's protected activities is wholly speculative, any dispute of fact on this issue is not genuine and therefore does not preclude summary judgment.  *See, e.g.*, *Thompson v. Spota*, No. CV 14-2473 (JMA) (AKT), 2018 WL 6163301, at *31 (E.D.N.Y. Aug. 23, 2018), *report & recommendation adopted*, 2018 WL 4771901 (E.D.N.Y. Sept. 30, 2018); *see also Newsome v. IDB Capital Corp.*, No. 13-CV-6576 (VEC), 2016 WL 1254393, at *5 n.13 (S.D.N.Y. Mar. 28, 2016) (noting that plaintiff's claims are "based on pure speculation—he offers no admissible evidence to support his claim that . . . [his supervisor] was aware of [his] discrimination claims at that time"); *Schupbach v. Shinseki*, 905 F. Supp. 2d 422, 437 (E.D.N.Y. 2012) ("A plaintiff cannot simply substitute utter speculation for the competent proof that would

be necessary to permit rational inferences by a jury of . . . retaliation." (citing *Soto v. Runyon*, 13 F. Supp. 2d 215, 223 (D.P.R. 1998))).

Plaintiff's citations to Judge Engelmayer's Opinion and Order finding that at the pleading stage Plaintiff plausibly *alleged* general corporate knowledge—Plaintiff telling Ms. Perez who informed Ms. Ortiz—are unavailing.  (*See* Pl.'s Opp. 13.)   At the summary judgment stage, Plaintiff is no longer entitled to have her bare allegations accepted as true.  *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).  As Plaintiff has failed to identify any evidence in the record other than her own speculative deposition testimony, her "unsupported allegations do not create a material issue of fact."  *Weinstock*, 224 F.3d at 41 (citing *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); and *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)).

Moreover, Plaintiff's argument that NYU Langone "must have known" about her protected activity because Plaintiff "accompanied Ms. Troche a number of times to make complaints to management" (Pl.'s Opp. 13) does not establish causation or create a genuine dispute of material fact.  Putting aside the fact that Plaintiff again relies exclusively on her own deposition testimony, any dispute on this issue is not material because these alleged complaints to management occurred more than two years before her termination.  (Pl.'s Opp. Ex. J 37:10–37:15.)  Courts have found far shorter periods to be insufficient as a matter of law to support an inference of causation based on temporal proximity alone.  *See, e.g.*, *Brown v. City of New York*, 622 F. App'x 19, 20 (2d Cir. 2015) (summary order) (noting "[t]he time lapses between [plaintiff's] protected activities and the alleged retaliatory acts—ranging from two months to several years—were simply too attenuated to establish that the alleged adverse employment actions were the product of a retaliatory motive" (collecting cases)).

Plaintiff argues that she has produced direct evidence of retaliatory animus sufficient to establish causation—namely, "instances of evidence elicited during [her deposition] questioning." (Pl.'s 13–15.)  Plaintiff points to her own testimony that she generally was confused as to the reason for her firing; she had a "belief" that she was discriminated against; she had a "gut feeling" that she was fired for assisting Ms. Troche; she was careful to follow to protocols; and union representatives were "surprised" by her termination.  (Pl.'s Opp. 14–15.)  These "conclusory allegations" and "unsubstantiated speculation" are insufficient for Plaintiff to meet her burden to establish a *prima facie* case of retaliation at the summary judgment stage.  *Brown*, 654 F.3d at 358 (quoting *Great American Ins.*, 607 F.3d at 292).

Finally, even if Plaintiff had established a *prima facie* case of retaliation, Defendant has provided, and Plaintiff has not rebutted, nondiscriminatory reasons for Plaintiff's termination, which defeat any inference of retaliation.  Defendants point to various documented examples of Plaintiff's unsatisfactory performance, several of which concern tardiness and unauthorized absenteeism, followed by the final absence, the incident with Mr. Hall and the alleged misrepresentations by Plaintiff.[3]  (Def.'s Br. 14–15.)  *Supra* pp. 2–4.  The record makes indisputably clear that Defendant had legitimate, nondiscriminatory reasons to terminate Plaintiff's employment, and Plaintiff offers no evidence—aside from further conclusory allegations and unsubstantiated speculation (*see* Pl.'s Opp. 16–21)—that Defendant's offered reason is a pretext.  *See, e.g., Fu v. Consol. Edison Co. of N.Y., Inc.*, ___ F. App'x ____, 2021 WL 1342915, at *3 (2d Cir. Apr. 12, 2021) (summary order) (affirming grant of summary judgment

---

[3] While Plaintiff disputes the bases for some of her disciplinary infractions, including the final infraction arising from her January 20 absence and representations to Mr. Hall (*see* Pl.'s 56.1 ¶¶ 15, 22–24, 26–27, 30–31), these disputes are irrelevant because Plaintiff provides no evidence suggesting that the actual bases were discriminatory or retaliatory in nature. *Howell v. Montefiore Med. Ctr.*, 13 Civ. 8505 (AT), 2016 WL 880373, at *6 (S.D.N.Y. Feb. 16, 2016) (citing *Roge v. NYP Holdings. Inc.*, 257 F.3d 164, 169 (2d Cir. 2001)).

where defendant "demonstrate[ed] a legitimate reason for [plaintiff's] termination—her decline in work performance beginning in 2013—that is not retaliatory" and plaintiff "presented no direct evidence of retaliation" to show that defendant's proffered reason was a pretext for retaliation); *Cousar v. N.Y.-Presbyterian/Queens*, No. 16-CV-1784 (MKB), 2019 WL 4015440, at *17 (E.D.N.Y. Aug. 26, 2019) (holding that retaliation claim "fails at the pretext stage because there is no evidence rebutting Defendant's legitimate business reasons for her termination — Plaintiff's time and attendance issues and the progressive discipline related thereto"); *see also Dinkins v. Suffolk Transp. Serv., Inc.*, 07–CV–3567, 2010 WL 2816624, at *8 (E.D.N.Y. July 15, 2010) (noting that history of disciplinary problems and violations of company policy provided legitimate and nondiscriminatory reason for adverse employment action (collecting cases)). Accordingly, even if Plaintiff could establish a *prima facie* case of retaliation, her claims would fail at step three of the *McDonnell Douglas* framework.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED as to Plaintiff's Title VII retaliation claim. Having dismissed all of Plaintiff's claims that were based on a federal question under 28 U.S.C. § 1331, and there being no other basis for federal jurisdiction over this case, the Court declines to exercise its supplemental jurisdiction over Plaintiff's remaining claims. *See* 28 U.S.C. § 1367(c)(3); *see also First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004). Accordingly, those claims are DISMISSED without prejudice. The Clerk of Court is respectfully requested to terminate docket entry 130 and close the case.

**SO ORDERED**.

**Dated: September 16, 2021**
   **New York, NY**

**Mary Kay Vyskocil**
**United States District Judge**